UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD GRAY,

    Plaintiff,

v.

CITY OF DETROIT, ET AL.,

    Defendants.

Case No. 17-cv-13548

UNITED STATES DISTRICT COURT
JUDGE
GERSHWIN A. DRAIN

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#32]

### I. INTRODUCTION

Plaintiff, Ronald Gray, filed the instant action against Defendants, the City of Detroit and Officer Stephen Heid alleging federal and state constitutional violations and other state law claims. Defendants have moved for summary judgment. For the reasons discussed below, this Court will grant Defendant's Motion. This Court will dismiss Counts I and IV[1] of Plaintiff's complaint and declines to exercise supplemental jurisdiction over Counts II, III, and IV.

---

[1] Plaintiff mis-numbered several counts in his complaint. Plaintiff's complaint should be numbered as follows: Count I alleges violations against Officer Heid under 42 U.S.C. § 1983; Count II alleges gross negligence; Count III alleges a claim of acting in concert; Count IV alleges municipal liability; and Count V alleges wrongful search, arrest, imprisonment, and intentional infliction of emotional distress.

-1-

## II. FACTUAL BACKGROUND

This case arises from a police call and subsequent response that allegedly went wrong. Plaintiff is a resident of the City of Detroit who fixes houses for a living. Dkt. No. 33, pgs. 7–8 (Pg. ID 438–39). Defendant Stephen Heid is a police officer with the City of Detroit. Officer Heid was suspended pending a criminal investigation at the time of his deposition, taken on June 5, 2018. Dkt. No. 32-5, pg. 4 (Pg. ID 361). Officer Heid has been subjected to discipline in his department in addition to his suspension. *Id.* at pg. 9 (Pg. ID 366). He has also had citizen complaints filed against him, although he is unsure of how many complaints. *Id.*

Plaintiff leased a house located in Detroit to Roycina Moss. Dkt. No. 35, pg. 9 (Pg. ID 526). On August 16, 2017, Plaintiff's neighbor called him and stated that Moss was destroying his property. *Id.* Plaintiff then drove by the property and observed Moss busting out the windows of the house with a board. Dkt. No. 33, pg. 18 (Pg. ID 449). After this observation, he called the police and told them that his property was being destroyed. *Id.* at pg. 20 (Pg. ID 451). After Plaintiff called the police, he drove to the house of his mother in law, Betty Jenkins. *Id.* at pg. 31 (Pg. ID 462).

Officers Stephen Heid and Ali Bilal responded to the call after they received a radio call about a felonious assault in progress. Dkt. No. 32-5, pg. 4 (Pg. ID 361). The officers drove to Moss's location. *Id.* When they arrived, they observed

several women outside of the house. *Id.* Officer Heid spoke with Moss. Moss stated that her ex-boyfriend—Robert Gray—had come to the house and destroyed it. *Id.* Moss also stated that her ex-boyfriend threatened her with several long guns and fled in a white Chrysler Town and Country. *Id.* Moss then gave the officers a physical description of her ex-boyfriend and of the area that he might be in. *Id.* at pg. 5 (Pg. ID 362).

Officers Heid and Bilal then traveled to the area of Longview and Dickerson and saw a white Chrysler Town and County in the driveway of one of the houses there. *Id.* The officers approached Plaintiff's vehicle. *Id.* Plaintiff was in his car when the officers approached him. Dkt. No. 33, pg. 35 (Pg. ID 466). As the officers approached, Plaintiff stated that he was just calling the police. Dkt. No. 32-5, pg. 5 (Pg. ID 362). The officers walked to Plaintiff's car door, requested that Plaintiff exit the vehicle, and Officer Heid handcuffed Plaintiff. Dkt. No. 33, pg. 35 (Pg. ID 466). Officer Heid told Plaintiff that he was handcuffing him because the nature of the incident possibly involved firearms and violence. *See* Dkt. No. 32-5, pg. 5 (Pg. ID 362). One of the officers asked Plaintiff if he had any weapons in his vehicle; Plaintiff responded no. Dkt. No. 33, pg. 35 (Pg. ID 466). The officers then searched his car. *Id.* Plaintiff does not recall if the officers asked his consent before searching his car. *Id.* According to Officer Heid, he asked for Plaintiff's consent to

search his car and Plaintiff gave him verbal consent to search it. Dkt. No. 32-5, pg. 5 (Pg. ID 362). Officer Heid did not find anything in the vehicle. *Id.*

After Officer Heid searched Plaintiff's car, Plaintiff told the officers that his handcuffs were too tight. Dkt. No. 33, pg. 37 (Pg. ID 468). According to Plaintiff, the officers did not loosen the handcuffs. *Id.* Plaintiff states that he suffered from "very deep" cuff marks as a result of the tight handcuffs. *Id.* at pg. 70 (Pg. ID 501). According to Officer Bilal, he loosened Plaintiff's handcuffs immediately after Plaintiff complained that they were too tight. Dkt. No. 32-10, pg. 7 (Pg. ID 408). Officer Bilal put Plaintiff in the back of his scout car and sat with Plaintiff inside of the car. *Id.* at pg. 8 (Pg. ID 409). Plaintiff continued to complain about his handcuffs being too tight. Dkt. No. 33, pg. 38 (Pg. ID 469). Plaintiff then observed Officer Heid approach Ms. Jenkins' house door and start to yell at her. *Id.* Officer Heid wanted to search Ms. Jenkins' house for guns. *Id.* Plaintiff's mother in law initially said no to the search. *Id.* However, Officer Heid "grilled her," "threatened her," and "scare[d]" her into consenting to the search. *Id.* at pg. 40 (Pg. ID 471). Officer Heid contends that he asked Plaintiff's mother in law to consent to the search and she willingly signed a consent form. Dkt. No. 32-5, pg. 6 (Pg. ID 363); *see also* Dkt. No. 32-6, pg. 2 (Pg. ID 380).

Officer Heid then entered Ms. Jenkins' home. *Id.* Plaintiff states that Officer Heid was going back and forth between the house and the scout car during the

search. Dkt. No. 33, pg. 40 (Pg. ID 471). During this time, Officer Heid told Plaintiff that his nickname on the street was "monster" and that he was a "jump-out" boy—that is, someone who patrols the street "like a gang." *Id.* at pgs. 40–41 (Pg. ID 471–72). According to Plaintiff, Officer Heid said these things to intimidate him and let Plaintiff know that he would find weapons or drugs in the house. *Id.* at pg. 41 (Pg. ID 472). Plaintiff complained to Officers Heid and Bilal that they were treating him poorly and he told the officers that he would file a lawsuit against them. Dkt. No. 35-1, pg. 5 (Pg. ID 556).

While Officer Heid was searching for the guns, Plaintiff began experiencing chest pains, which he communicated to the officers. Dkt. No. 33, pg. 43 (Pg. ID 474). The officers did not call an ambulance immediately because Officer Heid was continuing to search for the guns. *Id.* Officer Heid eventually found two firearms, ammunition, and cartridges in the upstairs attic and took custody of the items. Dkt. No. 32-5, pg. 6 (Pg. ID 363); Dkt. No. 32-7, pgs. 2–3 (Pg. ID 382–83); Dkt. No. 32-7, pg. 4 (Pg. ID 384).

The officers called an ambulance after Heid found the guns. *Id.* at pg. 44 (Pg. ID 475). The ambulance arrived at Ms. Jenkins' home and the emergency personnel examined Plaintiff. *Id.* at pg. 46 (Pg. ID 477). During this time, Officers Heid and Bilal determined that Plaintiff was the one who initially called the police. *Id.* The officers removed the handcuffs from Plaintiff and said that he was free to

go. *Id.* Plaintiff then left in the ambulance. *See id.* at pg. 47 (Pg. ID 478). The ambulance transported Plaintiff to St. John Hospital. *Id.* at pg. 48 (Pg. ID 479). Plaintiff asserts that he brought his deep cuff mark injuries to the attention of the treating personnel when he arrived at the hospital. *Id.* at pg. 70 (Pg. ID 501). However, physical examinations performed at the hospital do not indicate that Plaintiff had any cuff mark injuries on his wrists. Dkt. No. 32-11, pgs. 7, 9 (Pg. ID 428, 430). Nor do any of his treating physicians' notes suggest that he had any wrist injury or discomfort. *See* Dkt. No. 32-11.

Officers Heid and Bilal returned to the Ninth Precinct to place Plaintiff's weapons in safekeeping. Dkt. No. 32-5, pg. 7 (Pg. ID 364). While Officer Heid processed Plaintiff's weapons, another officer, Agent Marcus Robinson, ran Plaintiff's address through the system. *Id.* Robinson found that Plaintiff had been discharged from probation for carrying a concealed weapon ("CCW") not long ago. *Id.* at pg. 8 (Pg. ID 365). According to Officer Heid, this made Plaintiff a convicted felon and prohibited him from possessing firearms. *Id.* Therefore, Officers Heid and Bilal traveled to St. John Hospital and placed Plaintiff in custody for being a felon in possession of a firearm. *Id.* Officer Heid contends that he did not place Plaintiff under arrest; rather, he placed him in a "brief detainment" pending investigation. *Id.* at pg. 11 (Pg. ID 368). Plaintiff contends that he has never been a felon. Dkt. No. 35-1, pg. 5 (Pg. ID 556).

Plaintiff states that when the offices arrived at the hospital, they directed various profanities at him, including racial slurs, and cuffed him to his hospital bed. Dkt. No. 33, pg. 49–51 (Pg. ID 480–82). The officers stayed with Plaintiff at the hospital for 45–90 minutes. *Id.* at pg. 51 (Pg. ID 482). During this time, a different officer. Detective Mack, arrived at the hospital and questioned Plaintiff about the incident leading up to Plaintiff's 911 call. *Id.*; Dkt. No. 32-5, pg. 8 (Pg. ID 365). Detective Mack took Plaintiff's statement and the officers released Plaintiff from police custody. Dkt. No. 32-5, pg. 8 (Pg. ID 365). Detective Mack then typed a not-in-custody warrant for Plaintiff for being a felon in possession of a firearm. *Id.* When the officers left, they uncuffed Plaintiff. Dkt. No. 33, pg. 51 (Pg. ID 482). Officers Heid and Bilal then delivered Plaintiff's firearms to the Eleventh Precinct. Dkt. No. 32-5, pg. 8 (Pg. ID 365). Plaintiff spent approximately eight hours in the hospital and then went home. Dkt. No. 33, pg. 49 (Pg. ID 480). Plaintiff asserts that he still experiences numbness in his hands due to his handcuffs being too tight. *Id.* at pg. 67 (Pg. ID 498). Plaintiff also experiences loss of sleep, anxiety, depression, pain in his hands, and a phobia of the police as a result of the incident. *Id.* at pg. 70 (Pg. ID 501).

Plaintiff filed his complaint on September 25, 2018 in the Circuit Court for Wayne County. Dkt. No. 1, pg. 6 (Pg. ID 6). Plaintiff's complaint brings five counts: (1) a 42 U.S.C. § 1983 claim alleging violations of the 1st, 4th, and 14th

Amendments; (2) a gross negligence claim; (3) an acting in concert claim; (4) a 42 U.S.C. § 1983 claim alleging *Monell* liability against the City of Detroit; and (5) a claim alleging wrongful search, arrest and imprisonment, and intentional infliction of emotional distress. *Id.* at pgs. 9–13 (Pg. ID 9–13). On October 31, 2017, Defendants removed the action to this Court. Dkt. No. 1. Defendants moved for summary judgment on July 19, 2018. Dkt. No. 32. Plaintiff opposed Defendants' Motion on August 8, 2018. Dkt. No. 35. Defendants filed their reply on August 22, 2018. Dkt. No. 36.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) governs summary judgment. The Rule states, "summary judgment shall be granted if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). "All factual inferences 'must be viewed in the light most favorable to the party opposing the motion.'" *Id.* (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Ultimately, the court evaluates "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## IV. DISCUSSION

1. 42 U.S.C. § 1983
   a. Unlawful Seizure and False Arrest

Plaintiff brings an unlawful seizure claim and a false arrest claim against Defendant Heid, alleging that Heid lacked probable cause to detain him. Dkt. No. 1, pg. 9 (Pg. ID 9). "A [federal] false arrest claim . . . requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005)). The Sixth Circuit holds that probable cause exists when a police officer "discovers reasonably reliable information that the suspect has committed a crime." *Courtright v. City of Battle Creek*, 839 F.3d 513, 521 (6th Cir. 2016) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

Here, Officer Heid obtained reasonably reliable information that Plaintiff had assaulted Ms. Moss when Ms. Moss told him that Plaintiff had threatened her with guns. He also obtained reasonably reliable information that Plaintiff was a felon in possession of firearms when Agent Robinson informed him that Plaintiff had been charged with carrying a concealed weapon. Plaintiff argues that Defendant fabricated evidence by claiming that Moss told him that Plaintiff

assaulted her. Dkt. No. 35, pg. 21 (Pg. ID 538). However, there is no evidence in the record to support Plaintiff's claims of fabrication.

Accordingly, this Court finds that Officer Heid had probable cause to arrest and detain Plaintiff and will dismiss Plaintiff's claims of unlawful seizure and false arrest.

    b. Unlawful search

Plaintiff asserts a claim of unlawful search against Defendant Heid. Dkt. No. 1, pg. 9 (Pg. ID 9). Officer Heid searched Plaintiff's car and Ms. Jenkins' home during the incident. Officer Heid had probable cause to search Plaintiff's car. Roycina Moss informed Officer Heid that Plaintiff had threatened her with guns and then fled in his car. Dkt. No. 32-5, pg. 4 (Pg. ID 361). So it was reasonable that Heid would believe that the guns used would be in Plaintiff's car.

Defendant also searched Ms. Jenkins' home. Plaintiff does not have standing to assert a constitutional violation of Ms. Jenkins' home. "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *U.S. v. Williams*, 354 F.3d 497, 511 (6th Cir. 2003). However, even if Plaintiff did have standing, the search of Ms. Jenkins' home was valid. When Officer Heid did not find the guns in Plaintiff's car, he searched Ms. Jenkins' home. *Id.* at pg. 5, 6 (Pg. ID 362–63). Moss informed Heid that the Plaintiff had guns. Because Heid did not find the guns in Plaintiff's car, there was

probable cause to believe that they were located inside of the house where Heid found Plaintiff. Additionally, Ms. Jenkins consented to the search of her home and signed a consent to search form.

For these reasons, this Court finds that there was no unlawful search and will summarily dismiss Plaintiff's claim of unlawful search.

    c. Retaliation

Plaintiff asserts a First Amendment retaliation claim against Officer Heid. Dkt. No. 1, pg. 9 (Pg. ID 9). Plaintiff alleges that Officer Heid charged him with being a felon in possession of a firearm and detained him in retaliation for him complaining about Heid's conduct. Dkt. No. 35, pg. 23 (Pg. ID 540).

A First Amendment retaliation claim requires proof that "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Paterek v. Vill. of Armada, Mich.*, 801 F.3d 630, 645 (6th Cir. 2015). In this case, Plaintiff contends that he engaged in the constitutionally protected conduct of criticizing or questioning public officials. Dkt. NO. 35, pg. 22 (Pg. ID 539). Plaintiff's affidavit states that he complained to Officers Heid and Bilal about their poor treatment of him and he told them that he would contact an attorney to file a lawsuit against them. Dkt. No. 35-1, pg. 5 (Pg.

ID 556). Plaintiff engaged in constitutionally protected conduct. The First Amendment protects an individual's right to criticize a public official. *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998).

Plaintiff next claims that charging him with being a felon in possession of a firearm and detaining him was an adverse action that would deter an ordinary person from continuing to question the police. This Court agrees that a warrant issue and detainment would be enough to deter an ordinary person from continuing to question the police.

Lastly, Plaintiff asserts that Officer Heid's conduct was motivated at least in part by the Plaintiff's protected conduct. Plaintiff denies that he has ever been a felon. Dkt. No. 35-1, pg. 5 (Pg. ID 556). Defendant Heid states that Agent Robinson found information that Plaintiff had a previous CCW charge. Dkt. No. 32-5, pg. 8 (Pg. ID 365). Carrying a concealed weapon is a felony under Michigan law. *See* Mich. Comp. Laws Ann. § 750.227. Defendant also stated in his police report that Plaintiff was discharged from probation for a CCW charge. Dkt. No. 32-7, pg. 3 (Pg. ID 383). "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *People v. Maggit*, 903 N.W.2d 868, 872 (Mich. Ct. App. 2017). "[T]he evidence available to

the officer must be sufficient to lead a reasonable person to believe that the arrestee has probably committed . . . a crime." *U.S. v. Brooks*, 270 F. App'x 382, 384 (6th Cir. 2008). The record establishes that Officer Heid received trustworthy information from a fellow officer that Plaintiff had a CCW charge on his record. Plaintiff denies having a CCW charge. However, there is no information in the record to establish that Defendant fabricated the information that he received from Agent Robinson. Therefore, Heid had probable cause to detain Plaintiff at the hospital.

In conclusion, based on the evidence in the record, this Court will dismiss Plaintiff's First Amendment retaliation claim against Defendant Heid.

    d.  Excessive Force

Plaintiff alleges that Defendant Heid used excessive force in handcuffing him. Dkt. No. 1, pg. 9 (Pg. ID 9). "[F]or a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to identify a genuine issue of material fact that (1) he complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced "some physical injury" resulting from the handcuffing." *Getz v. Swoap*, 833 F.3d 646, 654 (6th Cir. 2016). Further, [s]tanding alone, "a subjective feeling of pain or numbness . . . does not constitute a physical injury." *Jackson v. Lubelan*, 657 F. App'x 497, 501 (6th Cir. 2016).

Plaintiff states that he repeatedly told the officers that his handcuffs were too tight. Dkt. No. 33, pg. 37–38 (Pg. ID 468–69). Plaintiff contends that neither Officer Heid nor Officer Bilal loosened his handcuffs after he complained. *Id.* Plaintiff stated that he had "very deep" cuff marks from the handcuffs. *Id.* at pg. 70 (Pg. ID 501). He also states that he still experiences numbness in his hands due to the tightness of the handcuffs *Id.* at pg. 67 (Pg. ID 498). However, Plaintiff's medical records do not indicate the presence of deep cuff marks or any corresponding pain that Plaintiff had or has as a result of the handcuffs. Dkt. No. 32-11, pgs. 7, 9 (Pg. ID 428, 430).

The record does not contain enough evidence for Plaintiff's excessive force claim to survive summary judgment. The only evidence of Plaintiff's injuries from the handcuffs are his subjective statements of his deep cuff marks and subsequent numbness. Standing alone, Plaintiff's statements are not sufficient to establish physical injury. Therefore, this Court will dismiss Plaintiff's claim of excessive force. In summary, this Court will summarily dismiss Plaintiff's § 1983 claims against Officer Heid alleging unlawful seizure, false arrest, unlawful search, retaliation, and excessive force.

    e. Qualified Immunity

Defendant Heid additionally asserts that he is entitled to qualified immunity for all of the § 1983 claims that Plaintiff asserts against him. Dkt. No. 32, pgs. 30–31

(Pg. ID 319–20). To establish qualified immunity, courts ask "whether the facts alleged or shown make out a violation of a constitutional right and whether the right at issue was clearly established at the time of the incident." *Sumpter v. Wayne Cty.*, 868 F.3d 473, 480 (6th Cir. 2017). A plaintiff must meet both requirements to defeat a qualified immunity assertion. To be clearly established, "the case law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Clemente v. Vaslo*, 679 F.3d 482, 490 (6th Cir. 2012) (quoting *Saylor v. Bd. of Educ. of Harlan Cty.*, 118 F.3d 507, 515 6th Cir. 1997)). However, "some violations of constitutional rights are so obvious that a materially similar case would be unnecessary." *Id.* at 651 (quoting *Binay v. Bettendorf*, 601 F.3d 640, 646–47 (6th Cir. 2010)).

This Court has found that the record does not establish any constitutional violations. Thus, Plaintiff cannot defeat Defendant's qualified immunity defense. Defendant is entitled to qualified immunity for Plaintiff's § 1983 claims.

2.  Municipal Liability under 42 U.S.C. § 1983

Plaintiff's sole claim against the City of Detroit is a municipal liability claim. Dkt. No. 1, pg. 11 (Pg. ID 11). To prevail in a § 1983 claim against a municipality, one must demonstrate: (1) the deprivation of a constitutional right; and (2) that the defendant (municipality) is liable for the violation. *Ellis ex rel. Pendergrass v.*

*Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). As this Court analyzed above, there was no deprivation of his constitutional rights. Therefore, Plaintiff's § 1983 claim fails under element one.

Even if there was a constitutional deprivation, Plaintiff still needs to prove the municipality is liable. To do this, Plaintiff "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "A municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'" *Id.* (quoting *Monell*, 436 U.S. at 694). Plaintiff must show one of the following to prove this claim:

> (1) the existence of an illegal official policy or legislative enactment;
> (2) that an official with final decision making authority ratified illegal actions;
> (3) *the existence of a policy of inadequate training or supervision*; or
> (4) *the existence of a custom of tolerance or acquiescence of federal rights violations.*

*Burgess*, 735 F.3d at 478 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (emphasis added)).

Plaintiff asserts that there is a pervasive pattern of retaliation and unconstitutional conduct within the Detroit police department that Defendant has acquiesced in. *See* Dkt. No. 35, pg. 31 (Pg. ID 548). Additionally and/or alternatively, Plaintiff argues that Defendant knew about a pattern of

unconstitutional conduct and failed to adequately train its officers to not engage in constitutional violations. *Id.* at pg. 32 (Pg. ID 549).

Plaintiff requested the disciplinary records of Officers Heid and Bilal as a part of his discovery requests. Dkt. No. 35-8, pg. 3 (Pg. ID 643). Defendant objected to this request as vague, overbroad, not likely to lead to admissible evidence, and privileged. *Id.* Plaintiff filed a motion to compel regarding this evidentiary issue that is pending before Magistrate Judge Majzoub. Dkt. No. 21. It is therefore unclear whether the record would establish enough evidence for Plaintiff's *Monell* claim to survive until Magistrate Judge Majzoub rules on Plaintiff's motion to compel. However, as this Court has reasoned, Plaintiff's *Monell* claim must fail because he cannot establish that there was a constitutional deprivation.

3. State Claims

Count II of Plaintiff's complaint alleges gross negligence, Count III alleges a claim of acting in concert, and Count V alleges state claims of wrongful search, arrest, imprisonment, and intentional infliction of emotional distress. Dkt. No. 1, pgs. 10, 13 (Pg. ID 10, 13). Pursuant to 28 U.S.C. § 1367, district courts may exercise supplemental jurisdiction over state law claims. However, "supplemental jurisdiction is discretionary, not mandatory." *Charvat v. NMP, LLC*, 656 F.3d 440, 446 (6th Cir. 2011). A district court may decline to exercise supplemental jurisdiction when:

(1) the claim raises a novel or complex issue of state law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) *the district court has dismissed all claims over which it has original jurisdiction*, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

(Emphasis added). 28 U.S.C. § 1367(c); *Hucul Advert., LLC v. Charter Twp. of Gaines*, 748 F.3d 273, 281 (6th Cir. 2014). Here, this Court has dismissed all of Plaintiff's federal claims. Therefore, this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. In conclusion, this Court will dismiss Counts I and IV of Plaintiff's complaint and will decline to exercise supplemental jurisdiction over Counts II, III, and V of Plaintiff's complaint.

## V. Conclusion

For the reasons discussed herein, the Court will grant Defendants' Motion. Plaintiff's federal law claims are dismissed, and this Court will decline supplemental jurisdiction over Plaintiff's state law claims.

SO ORDERED.

Dated:    October 2, 2018

s/Gershwin A. Drain
Hon. Gershwin A. Drain
United States District Court Judge

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 2, 2018, by electronic and/or ordinary mail.

s/Teresa McGovern
Case Manager Generalist
